UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

RODERICK SCAFE,

                Plaintiff,

-against-

GOVERNOR GEORGE PATAKI, GEORGE B.
ALEXANDER, CHAIRMAN NEW YORK STATE
DIVISION OF PAROLE, COMMISSIONER
MARIETTA S. GAILO, COMMISSIONER LIVIO
LAZZARI, COMMISSIONER JAMES B.
FERGUSON, NEW YORK EXECUTIVE
DEPARTMENT OF PAROLE,

                Defendants.

------------------------------------------------------------------ x

06-CV-6051 (ARR)

NOT FOR ELECTRONIC PRINT OR PUBLICATION

OPINION AND ORDER

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 3 1 2008 ★
BROOKLYN OFFICE

ROSS, United States District Judge:

Plaintiff Roderick Scafe, *pro-se*, brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants adopted a policy to deny parole to offenders without balancing the statutory factors set forth in New York law. Following discovery, both parties filed motions for summary judgment. For the following reasons, the court denies plaintiff's summary judgment motion and grants defendants' summary judgment motion.

## BACKGROUND

Plaintiff Scafe is a New York State prisoner serving a sentence of ten years to twenty years in prison pursuant to a 1997 conviction of one count of attempted murder in the second

1

degree, one count of assault in the first degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. On September 5, 2006, he appeared before the Parole Board, presided over by defendants Marietta S. Gailor, James Ferguson, and Livio Lazzari, and was denied parole for the first time.[1] Plaintiff alleges that the New York State Executive Department, Division of Parole, has violated his constitutional rights by adopting a policy that ignores the statutory factors set forth in N.Y. Exec. Law § 259-i(2)(c)(A) and by denying him parole solely "based upon the nature and severity of the underlying crime [he committed] and the statement [that] 'there is a reasonable probability that [if plaintiff were released] he would not live and remain at liberty without violating the law.'" Compl. at 4A. Plaintiff contends that the Parole Board refuses "to exercise any discretion at all and automatically denie[]s release." Compl. at 4A. Plaintiff seeks $350 million in damages for pain and suffering. Compl. at 4A. Plaintiff also seeks an injunction ordering an immediate rehearing of his parole application, wherein different commissioners shall preside and properly consider the statutory factors. See Compl. at 4A, 5.

## STANDARD OF REVIEW

A moving party deserves summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993); see Fed. R. Civ. P. 56(c). The function of the court is not to resolve

---

[1] In his motion for summary judgment, plaintiff cites to a July 8, 2008 parole hearing, after which he was denied parole for the second time. See Pl's Mot. for Summary Judgment, at 5. Plaintiff's complaint was filed 2 years prior to the July 8, 2008 hearing and plaintiff never moved pursuant to Fed. R. Civ. P. 15(d) to amend his complaint to include this latest parole hearing in this cause of action. Therefore, this Opinion and Order will not consider the facts and circumstances relating to the July 8, 2008 parole hearing.

2

disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty, 477 U.S. 242, 249 (1986). In addressing a motion for summary judgment, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Balderman v. U.S. Veterans Admin., 870 F.2d 57, 60 (2d Cir. 1989). Summary judgment should be granted "[o]nly when no reasonable trier of fact could find in favor of the non-moving party . . . ." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). The moving party bears the initial burden of demonstrating that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully shoulders its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## DISCUSSION

In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. Viewing the complaint as raising the strongest arguments that it suggests, see generally McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), the court construes plaintiff's allegations as stating civil rights claims under 42 U.S.C. § 1983 for a due process violation, an equal protection violation, and a violation of the *Ex-Post Facto* Clause of the U.S. Constitution.

### A. Plaintiff's Procedural Due Process Claim Fails

Plaintiff alleges that there is a Constitutional right to have parole decisions made in accordance with New York law and that the Parole Board adopted a policy discounting and ignoring the factors governing discretionary parole set forth in N.Y. Exec. Law § 259-i. See Compl. at 4A. In addition to challenging this alleged policy, plaintiff also argues that defendants failed to consider the statutory guidelines in his individual parole determination. Compl. at 4A, 5.

New York law provides that "discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. Exec. Law § 259-i(2)(c)(A). Rather, the Board may grant parole after "considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Id. To guide the Board in its decision, the statute outlines five factors that must be considered:

1. The institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;
2. Performance, if any, as a participant in a temporary release program;
3. Release plans including community resources, employment, education and training and support services available to the inmate;
4. Any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of corrections services . . . and
5. Any statement made by the crime victim.

N.Y. Exec. Law. § 259-i(2)(c)(A). The statute does not, however, guide the Board regarding how much weight it should assign to each factor. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008).

*i. Plaintiff has Failed to Show that the Parole Board Adopted a Policy to Deny Parole to Offenders*

Plaintiff alleges that an inmate has a "constitutional right to have a parole determination made in accordance with the proper statutes and laws" and that the Board adopted a "policy to generally deny parole without using section 259-i." Compl. at 4A. Defendants deny that any such policy existed. See Defs' Mem. Of Law in Support of Mot. For Summary Judgment at 8 (hereinafter "Defs' Mem."). Plaintiff relies heavily on a case in the Southern District of New York, in which Judge Brieant held that "there exists a Constitutional right to have a parole decision made in accordance with the statute." Graziano v. Pataki, 2006 WL 2023082, at *8 (July 17, 2006 S.D.N.Y.). Facing a similar allegation, Judge Brieant concluded that a policy by which the Board refuses to exercise its discretion delineated in N.Y. Exec. Law § 259-i, and instead systematically denies parole, constitutes a due process violation. Id. at 7. Therefore, Judge Brieant denied the defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss and permitted the case to proceed to discovery so that the plaintiff could have an opportunity to establish whether such an unpublished policy existed. Id. at *8. Other courts in this circuit, facing the same allegation, have declined to adopt Graziano's reasoning, holding that there is no constitutional entitlement to have a process of decision making that comports with New York law. See e.g., Schwartz v. Dennison, 518 F.Supp.2d 560, 574 (S.D.N.Y.) (concluding that a policy denying parole to sex offenders would not violate due process); Mathie v. Dennison, 2006 WL 2351072, at *7 n.4 (Aug. 16, 2007 S.D.N.Y.) (noting that Graziano's reasoning was "unpersuasive").[2]

---

[2] The court is persuaded by Judge Lynch's reasoning in Mathie, in which the court concluded that a general policy to deny parole to violent offenders would not violate due process. Because discovery was conducted in this case, however, the court will review the record and address the pending summary judgment motions.

5

Assuming, for the purpose of this summary judgment motion only, that a Constitutional right to have a parole determination made in accordance with New York law exists, plaintiff's motion for summary judgment is denied and defendants' summary judgment motion is granted because plaintiff has failed to adduce any credible evidence to support the inference that such a policy exists. Instead, plaintiff offers bald conclusory and self-serving allegations. See Pl's Mot. For Summary Judgment, at 7, 8 (hereinafter "Pl's Mot.") ("The gravamen of the plaintiff's complaint in this court is that his rights to access a fair and unbiased hearing was [sic] abridged by an unconstitutional policy and the defendants' failure to weight [sic] all the factors was an abandonment of all the norms governing Parole Board rules.") ("The G.O.P.'s policies were delegated to the Parole Board Commissioners and the authority to establish this policy affecting a substantial right impugns the fairness of the hearing.") ("The parole board is acting as they where [sic] part of Joseph Bruno's political party and therefore, policy making officials."). Such conclusory statements and allegations, without more, cannot serve as the bases for plaintiff's motion for summary judgment, nor do these allegations raise an issue of material fact that would forestall defendants' summary judgment motion on plaintiff's due process claim.

Plaintiff also offers statistics to support his contention that the Board of Parole adopted an unconstitutional policy. Plaintiff attached various statistical tables tracking the Parole Board's decisions, by crime of commitment, as exhibits to his motion for summary judgment. See Pl's Mot., Ex. B. Plaintiff contends that these tables prove his allegation that the Panel implemented an unconstitutional policy to automatically deny parole to offenders. These statistics, however, do not support plaintiff's argument for two reasons. First, the statistics do not encompass parole

decisions made in 2006, the time period during which plaintiff's claim arose. Rather, the statistics cover fiscal years 1991 through 2003. See Pl's Mot., Ex. B. Second, while the statistics certainly reflect a decline in the percentage of discretionary release granted by the Parole Board for offenders, the statistics do not demonstrate a total ban on granting parole. See Pl's Mot., Ex. B, "Parole Board Decision by Crime of Commitment, FY 2000-2001 to FY 2002-2003 Initial Interview" (indicating that the release rate for offenders serving time for attempted murder in the second degree fell from 9% for FY 2000-2001 to 7% for FY 2002-2003). Therefore, the statistics offered by defendant actually undermine his point: the tables demonstrate that discretionary release is granted for offenders, illustrating that a blanket policy banning parole does not exist.

Next, plaintiff contends that newspaper articles and law journals documented the Board's unconstitutional policy. See Ex. J, Dep. of Roderick Scafe, Tr. at 66-67; see Pl's Mot., Exs. D, E. These articles are inadmissible hearsay and therefore cannot sustain his burden of demonstrating that defendants created a policy under which unconstitutional practices occurred. See Fed. R. Civ. P. 56(e); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Holmes v. Gaynor, 313 F.Supp.2d, 345, 358n.1 (S.D.N.Y. 2004) (noting that a newspaper article is "hearsay and inadmissible for proving the truth of the matters asserted").

Moreover, even if the court were to consider these articles, they do not support plaintiff's allegation. The first article, entitled Bruno vs. Spitz, covers A-1 felonies, see Pl's Mot., Ex. D, Bruno vs. Spitz, NEW YORK POST, Feb. 6, 2008, and plaintiff was not convicted of a crime that falls within that class of crime. See Defs' Mot., Ex. F. Second, the article indicates that offenders were granted parole in 2006, once again undermining plaintiff's argument that a general policy to

deny parole exists. See Pl's Mot., Ex. D, Bruno vs. Spitz, NEW YORK POST, Feb. 6, 2008 ("Last year ... 235 violent felons, or 17.5 percent, were released from prison, compared with 148 during Republican Gov. Pataki's law year in 2006."). Also, an increase in parole from 2006 to 2007 does not demonstrate that a total ban existed at the time of plaintiff's 2006 hearing; it merely demonstrates that the rate of parole increased over the course of one year. A second, undated article, indicates that the rate of parole increased under both Governors Pataki and Spitzer. See "GOP Plea on Parole," NEW YORK DAILY NEWS, undated ("The News has spotlighted a surge in the number of convicted killers winning parole, an increase that began in former Gov. George Pataki's last year in office and grew even more dramatically when Spitzer took charge last year."). Finally, plaintiff did not attach any law review articles to his motion for summary judgment. Once again, plaintiff levied a conclusory allegation, which, as previously noted, cannot serve as the basis for granting summary judgment, nor can it defeat defendants' summary judgment motion..

Furthermore, plaintiff admits that no one personally informed him of the policy, he never heard defendants speak about the alleged policy, and he inferred the existence of such a policy from reading newspaper reports. See Ex. J, Dep. of Roderick Scafe, Tr. at 67-71. Moreover, plaintiff admitted in his deposition that other inmates are often paroled, belying his allegation that a general policy to deny parole to offenders exists. See Ex. J, Dep. of Roderick Scafe, Tr. at 78-79. ("A lot of people have the first parole ten years. They got released. They got a violent crime. They got released. Why can't I get released?"). Plaintiff thus undermines his own argument. In that same deposition, plaintiff also admitted that he could not prove his allegation. See Ex. J,

Dep. of Roderick Scafe, Tr. at 68. (responding to an inquiry regarding what role defendant Alexander played in developing the alleged policy, plaintiff replied "I can't prove that I know"). On the other hand, all defendants executed sworn affidavits in which each maintains that no general policy to deny parole based on the nature and severity of the underlying crime exists. See Decl. of Marietta S. Gailor at 1-2; Decl. of Livio Lazzari at 2; Decl. of James B. Ferguson, at 2. Thus, plaintiff has not adduced evidence sufficient to sustain his burden of demonstrating that defendants created a policy under which unconstitutional practices occurred.

For these reasons, the court holds that plaintiff failed to adduce evidence from which a reasonable juror could conclude that the Parole Board adopted a blanket policy to deny parole to offenders in violation of the Due Process clause. Therefore, plaintiff's motion for summary judgment is denied and defendants' summary judgment motion is granted.

### ii. *The Parole Board Did Not Act Arbitrarily or Capriciously When it Denied Plaintiff's Parole Application*

In addition to alleging an unconstitutional policy to denial parole to violent offenders, plaintiff contends that in his individual case, the Parole Board did not balance the statutory factors that are supposed to guide the Board's decision. See Compl. at 4. New York's discretionary parole system does not create a legitimate expectancy of release that gives rise to a due process right. See generally Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001); Standley v. Dennison, 2007 WL 2406909, at *9 (Aug. 21, 2007 N.D.N.Y.). Even though plaintiff has no liberty interest in parole, however, the Parole Board may not deny plaintiff's application for parole for arbitrary or impermissible reasons. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008); Standley, 2007 WL 2406909, at *9; Mathie v. Dennison, 2007 WL 2351072, at *6 (Aug. 16,

2007 S.D.N.Y.). Essentially, plaintiff contends that the Parole Board denied his release based solely on the nature of his crime, ignoring the statutory factors set forth in N.Y. Exec. Law. § 259-i(2)(C)(A). Thus, plaintiff argues that the Parole Board "didn't look at the 259-i," and that "they just made a decision just like that, saying that my criminal history, and my behavior. They made that decision, just like that. . . . They didn't look to my institution record to see that I fulfill[ed] all the programs that they gave me." Ex. J, Dep. of Roderick Scafe, Tr. at 50, 47-48.

The transcript of the parole hearing reveals, however, that the Board did consider the statutory factors when it decided to deny plaintiff's parole. First, the Board acknowledged as good accomplishments his participation in prison programs and behavioral achievements. See Compl. Ex. A, Tr. 5 (noting plaintiff's completion of the Alternatives to Violence program and "acceptable level of behavior for ten years in prison"). And, plaintiff expressed his remorse to the Board and accepted some responsibility for his crime, although he maintained that he acted in self-defense when he shot his nephew twice. Id. At the same time, however, the Board also noted that plaintiff had no proposed employment, an outstanding warrant related to a weapon possession in Virginia, and a pending deportation order. Id. at 4-5. Thus, after noting his achievements in prison, the Board denied parole, concluding that plaintiff's "violent behavior, serious injuries [he] inflicted, little regard for human life, perfunctory recognition of partial guilt are of concern and all factors considered make [plaintiff] inappropriate for release at this time." Id. at 7.

Despite plaintiff's protestations to the contrary, the record demonstrates that the Parole Board considered the statutory factors and made a reasoned decision when it denied his application for discretionary release. The Board considered his participation in prison anti-

violence programs and his acceptable behavior while incarcerated, and decided these factors were outweighed by the serious nature of plaintiff's crime and his continued insistence on placing some of the blame on his victim. The "Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record." Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *5 (S.D.N.Y. Jun. 26, 2003); see also Graziano, 2007 WL 2023082, at *8 ("where a Board has properly considered statutory guidelines, it may . . . deny parole where it determines upon a fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors."). Indeed, plaintiff even admits that he simply disagrees with the emphasis the Board of Parole placed on his crime. See Ex. J, Dep. of Roderick Scafe, Tr. at 52 ("Q: So again, basically you disagreed with the factors that the board focused on? A: Yes. All of the focus is on the nature of the crime. My violent behavior. They just can't focus on the nature of the crime.").

While the court understands that plaintiff vehemently disagrees with the Board's emphasis on his crime, the court cannot agree that the Board's decision was either arbitrary or impermissible, or contrary to New York law, which does not specify how to weigh the statutory factors. See Farid, 554 F.Supp.2d at 321. To the contrary, the record demonstrates that the Board took into account the statutory factors and reached a reasoned decision. In turn, because plaintiff has failed to adduce evidence sufficient to give rise to an inference of a due process violation, defendants' motion for summary judgment on this claim is granted.

### B. Plaintiff's Remaining Claims are Dismissed Pursuant to Fed. R. Civ. P.

### 12(b)(6)

A court may convert a motion for summary judgment into a Fed. R. Civ. P. 12(b)(6) motion to dismiss a complaint for failure to state a claim without notice to either party. See Katz v. Molic, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989). Conversion is appropriate when the court does not examine extrinsic evidence, but instead bases its decision to dismiss solely on the pleadings. Id. See also Schwartz v. Compaignie General Transatlantique, 405 F.2d 270, 273-74 (2d Cir. 1968). When considering a Rule 12(b)(6) motion, the court must accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). Furthermore, courts are particularly hesitant to dismiss actions filed by *pro se* litigants, as *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). As a general rule, an action brought *pro se* "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 10 (1980). Applying these standards, the remainder of plaintiff's claims must be dismissed for failure to state a claim.

*i. Plaintiff's Claims for Monetary Damages are Barred*

All of plaintiff's claims for money damages are barred under the rule set forth in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), where the Supreme Court held that a prisoner may not assert a damages claim under § 1983 that "attacks the fact or length of the inmate's confinement without first showing that the conviction or sentence has been reversed or otherwise invalidated." Odom v. Pataki, No. 00-CV-3727 (DC), 2001 WL 262742, at *3 (S.D.N.Y. Mar. 15, 2001) (*citing*

Heck, 512 U.S. at 486-87). Heck prohibits a § 1983 action if "success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). The Heck bar applies to a § 1983 damages action that, like this one, "challenges the fact or duration of parole release [because] the plaintiff is in effect attacking his confinement." Mathie v. Dennison, No. 06-CV-3184 (GEL), 2007 WL 2351072, at *4 (S.D.N.Y. Aug. 16, 2007) (quoting Hill v. Goord, 63 F.Supp.2d 254, 261 (E.D.N.Y. 1999)). Plaintiff's requests for damages are therefore dismissed.[3]

### ii. Plaintiff's Equal Protection Claim is Dismissed

Plaintiff has failed to assert a viable claim under the equal protection clause. If plaintiff's claim is that the parole board has a policy of refusing to consider the statutory factors at *all* parole hearings, regardless of the crime for which the parole-eligible prisoner has been convicted, his equal protection rights have not been violated because all inmates have been treated equally. On the other hand, if plaintiff's claim is that the alleged policy applies only to B-1 felony offenders, not other classes of prisoners, it fails as a matter of law. It is axiomatic that neither prisoners generally nor violent felony prisoners in particular, are a suspect class for purposes of the equal protection clause. See Lee v. Governor of State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996) (prisoners not a suspect class); Mathie, 2007 WL 2351072, at *8 (violent prisoners are not a suspect class). Thus, the state's purported blanket policy to deny parole to violent felony offenders need only be rationally related to a legitimate government interest, see Salahuddin v. Unger, No. 04-CV-2180, 2005 WL 2122594, at *7, (E.D.N.Y. Sept. 2, 2005). In this case, "the state's rational basis for a

---

[3] In light of the court's dismissal under Heck of all damages claims, there is no need to address the individual commissioner defendants' arguments that the 11th Amendment protects them from damages arising out of claims brought against them in their official capacity.

13

distinction in parole determinations between violent and nonviolent offenders is . . . preventing the early release of potentially violent inmates." Id. See also Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *5 (S.D.N.Y. Jun. 26, 2003) ("the Board's decision to get tough on violent offenders . . . seems entirely permissible [because it] closely relates to the statutory factor of whether release is not incompatible with the welfare of society.") (citation omitted). Thus, plaintiff's claim under the equal protection clause is dismissed.

    *iii. Plaintiff's Ex Post Facto Claim is Dismissed*

Similarly, plaintiff has not, and cannot, assert a viable claim under the *ex-post facto* clause. As the Second Circuit has noted, "[t]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change . . . increases the penalty by which a crime is punishable." Doe v. Pataki, 120 F.3d 1263, 1272 (2d Cir. 1997) (quoting California Department of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995)). In this case, it is undisputed that plaintiff was sentenced to a term of ten years to twenty years in prison, and that plaintiff has served the full twenty years. See Defs' Mem. at 11. Thus, contrary to plaintiff's contention, it cannot be said that the board's denial of parole in any way increased the penalty to which plaintiff was originally sentenced. His claim under the *ex-post facto* clause is therefore also dismissed.

## CONCLUSION

For the reasons explained above, plaintiff's motion for summary judgment is denied, defendants' motion for summary judgment is granted, and the case is dismissed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

					s/ ARR

					_____
					Allyne R. Ross
					United States District Judge

Dated: December 31, 2008
       Brooklyn, New York

SERVICE LIST:

<u>Pro Se Plaintiff</u>
Roderick Scafe
#97A6094
Arthur Kill Correctional Facility
2911 Arthur Kill Road
Staten Island, NY 10309

<u>Attorney for Defendants</u>
Julina Dawkins
Assistant Attorneys General
120 Broadway
New York, NY 10270


cc:     Magistrate Judge Lois Bloom